## A02A0478. VINTSON v. LICHTENBERG et al.
(568 SE2d 795)

RUFFIN, Judge.

Gene Vintson d/b/a Vintson Construction Company ("Vintson") and Richard and Peggy Lichtenberg entered into a contract for Vintson to build a home for the Lichtenbergs. After completing the home, Vintson sued the Lichtenbergs, alleging that they had failed to pay him for additional work he performed that was not covered by the original contract price. The trial court granted the Lichtenbergs partial summary judgment on Vintson's claims, and Vintson appealed. For reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] On appeal from a trial court's grant of summary judgment, we review the evidence de novo and in a light most favorable to the non-moving party.[2]

Viewed in favor of Vintson, the evidence shows that he entered the construction contract with the Lichtenbergs on August 28, 1997. The contract price for the new house was $686,200, but that price did not include the swimming pool, tennis court, and fencing. Under the contract, the parties agreed that when Vintson substantially completed the house, the Lichtenbergs would pay him "the remaining unpaid amount of the Contract Price together with all amounts due on Change Orders." The parties further agreed that,

> [a]s a condition precedent to final payment, [Vintson] shall submit to [the Lichtenbergs] an affidavit in accordance with OCGA Sec. 44-14-362 (or other applicable law) stating that all labor, materials and equipment and other indebtedness connected with the Work for which the Property might be responsible or encumbered by lien have been paid in full.

---

[1] See OCGA § 9-11-56 (c).

[2] See *White v. Cauthen*, 235 Ga. App. 245 (509 SE2d 140) (1998).

In May 1998, the Lichtenbergs moved into the house, and on May 21, 1998, Vintson gave them an invoice for additional construction not covered by the contract price. The invoice reflects that Vintson was charging the Lichtenbergs $97,106 in unspecified "upgrades," that most of the contract price had already been paid, and that, after calculating certain credits, the Lichtenbergs owed Vintson $65,925. In his appellate brief, Vintson states that the additional charge was for "overages and excess costs [he] incurred . . . in the construction." Richard Lichtenberg testified that this invoice reflected the accounting that he and Vintson agreed to "prior to [their] close on the house," and it "was Mr. Vintson's final accounting of overages." It is undisputed that the Lichtenbergs paid Vintson $57,525 on May 21, and the balance of the invoice at some later date.

On May 29, 1998, Vintson executed a contractor's affidavit in which he affirmed, in pertinent part,

> That [the] improvements or repairs have been fully completed according to the terms of the contract therefor. . . .
> That the agreed price or the reasonable value of the labor, services and materials incorporated into the improvements or repairs upon the real property . . . has been paid. This affidavit is made under the provisions of Section 44-14-361.2 of the Official Code of Georgia Annotated.

Notwithstanding his contractor's affidavit, on November 23, 1998, Vintson sent the Lichtenbergs a letter claiming that they owed him an additional $55,832.72 for change orders and extra items listed in the letter. Vintson subsequently sued the Lichtenbergs for this amount, plus interest.

The Lichtenbergs moved for partial summary judgment on the ground that Vintson's affidavit barred his claim for payment of extra costs.[3] Vintson responded with an affidavit in which he asserted that the Lichtenbergs were indebted to him and that, at the time he executed his contractor's affidavit, the parties knew that the Lichtenbergs still owed him money for extra work. According to Vintson's second affidavit, he executed the contractor's affidavit to "accommodat[e]" the Lichtenbergs in closing their loan, and its "sole purpose . . . was to dissolve all lien rights, not to acknowledge payment."

Based on this evidence, the trial court granted the Lichtenbergs partial summary judgment. The court agreed with the Lichtenbergs that Vintson's contractor's affidavit barred his claim for additional

---

[3] The Lichtenbergs acknowledged that a material issue of fact remained as to the cost of a stucco wall and gates Vintson constructed on the sides of the house.

charges. The court further found that "although [Vintson] ha[d] testified that he was owed additional monies at the time of the execution of the Contractor's Affidavit, no reasonable explanation for the contradiction was offered."[4]

On appeal, Vintson asserts that the trial court erred in applying the self-contradictory testimony rule because he "offered a reasonable explanation for any contradiction between the Contractor's Affidavit" and his subsequent testimony. Vintson further argues that the court erred in concluding that the contractor's affidavit barred his claim because other evidence existed which supported his right to recover the additional charges. We disagree with both assertions.

1. As a general rule, if a party offers self-contradictory testimony on a motion for summary judgment, then the conflicting testimony must be construed most strongly against the party offering it.[5] Testimony "is contradictory if one part of the testimony asserts or expresses the opposite of another part of the testimony."[6]

> There are situations[, however,] in which an honest mistake has been made in the first statement[, and] the proper approach is to intentionally contradict the first statement by way of explanation. We point out that even where testimony is contradictory, if a reasonable explanation is offered for the contradiction, the testimony will not be construed against the party-witness. The burden rests upon the party giving the contradictory testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge.[7]

In this case, it is clear that Vintson is relying on self-contradictory testimony. On the one hand, he unequivocally averred in his contractor's affidavit that the agreed price for the construction had been paid. Yet, when he responded to the Lichtenbergs' motion, he asserted that they still owed him over $54,000. In light of other evidence, Vintson's explanation that he thought the contractor's affidavit was a mere accommodation and only pertained to lien rights is unreasonable.

Most compelling is the fact that, only eight days before Vintson

---

[4] In his appellate brief, Vintson claims that the trial court never read or considered his second affidavit. Vintson appears to believe that this, by itself, constitutes reversible error. On appeal, however, we review the evidence de novo. See *White,* supra. Thus, even if the trial court failed to properly consider the affidavit, the failure is without consequence.

[5] See *Prophecy Corp. v. Charles Rossignol, Inc.,* 256 Ga. 27, 28 (1) (343 SE2d 680) (1986).

[6] Id. at 30 (2).

[7] (Emphasis omitted.) Id.

signed his contractor's affidavit, he presented the Lichtenbergs with an invoice which charged them for "upgrades" and reflected an overall financial accounting of the project. In Vintson's own words, the invoice was "an accounting of overages and excess costs incurred by Vintson in the construction." After the Lichtenbergs had paid Vintson at least $57,000 of the invoice balance, he stated under oath that he had been paid for the construction. It is unreasonable that Vintson would have remained quiet about the $54,000 claim merely as an accommodation to the Lichtenbergs, when both his invoice and contractor's affidavit clearly reflected that no such money was owed.

Furthermore, the record shows that Vintson was an experienced builder who had executed contractor's affidavits in the past. Although Vintson testified that he thought the affidavit meant that there was no lien on the house, he also stated that the affidavit meant "the bills ha[d] been paid." It is clear that, notwithstanding his explanation that he thought the contractor's affidavit only pertained to liens, Vintson also understood that he was claiming he had been paid. Thus, we conclude, as a matter of law, that Vintson's testimony is self-contradictory, that he has not offered a reasonable explanation for the contradiction, and that the contradiction must be construed against him.[8]

2. Construed in this manner, Vintson's testimony shows that, on May 29, 1998, when he executed the contractor's affidavit, the Lichtenbergs did not owe him any money under the contract. Vintson nevertheless argues that there is other evidence of his right to recover. Specifically, Vintson points to Richard Lichtenberg's deposition testimony in which he acknowledged that numerous items claimed by Vintson as additional work constituted legitimate charges over the contract price. But Richard Lichtenberg also clearly stated that he had already paid these charges under the May 21 invoice. Accordingly, Lichtenberg's testimony does not create a genuine issue of material fact as to whether he owed Vintson for these charges after May 29, 1998, and the trial court did not err in granting summary judgment to the Lichtenbergs on the charges.[9]

3. In light of our decision in Division 2, it is unnecessary to address whether the contractor's affidavit estopped Vintson from asserting claims for money owed based on work performed before May 29, 1998.

*Judgment affirmed. Pope, P. J., concurs. Barnes, J., concurs specially.*

---

[8] See *White*, supra at 247; *Balest v. Simmons*, 201 Ga. App. 605, 608 (1) (411 SE2d 576) (1991).

[9] See *White*, supra.

BARNES, Judge, concurring specially.

Although I concur fully in the majority opinion, I write separately to point out that what Vintson did in his second affidavit was merely to explain why he lied in his contractor's affidavit. That is not a reasonable explanation for the contradiction between the two affidavits under our law.

DECIDED JULY 11, 2002.

*William A. Trotter III*, for appellant.
*Kilpatrick Stockton, Joseph H. Huff*, for appellees.